STATE OF MINNESOTA *ex rel.* Minnesota Midland Railway
Company *vs.* TOWN OF HIGHLAND.

January 10, 1879.

**Municipal Aid to Railways.**—To be of any effect to bind a town to issue bonds to aid in the construction of a railroad under Laws 1877, *c.* 106, the agreement to issue bonds, provided for in section 7 of said chapter, must be arrived at and perfected before the construction of the road or piece of road, the construction of which such agreement is designed to aid.

Alternative writ of mandamus, from this court, to compel the issue, by the town of Highland in the county of Wabasha, of its interest-bearing bonds, to the amount of $5,000. The facts stated in the petition and writ are, in substance, as follows:

On and prior to February 1, 1876, the relator was and has ever since been a corporation, duly organized under the laws of the state, and authorized to build, equip, maintain and operate a railway for public use in the conveyance of persons and property, from the city of Wabasha, in the county of

Wabasha, in a westerly direction, through the counties of
Wabasha, Goodhue and Rice, to the city of Faribault, and
thence, by way of Mankato and New Ulm, to Big Stone Lake,
all in the state of Minnesota. That the construction of such
railroad would promote the general prosperity and welfare of
the respondent, which was, by Laws 1877, c. 106, (Gen. St.
1878, c. 34, §§ 92–105,) expressly authorized to aid in such
construction, in the manner and to the extent in such act
provided.

On March 16, 1878, the relator, desiring aid to the amount
of $5,000, from the respondent, in the construction of its
railway, made and delivered to the town clerk of the respond-
ent a definite proposition in writing, signed by its president
and secretary and sealed with its seal, containing a statement
that it desired bonds to such amount of $5,000, to be payable
in ten years, or before maturity at the option of the respond-
ent, with interest at seven per cent. per annum, payable semi-
annually. The proposition also provided that the bonds
should be delivered to the relator when it should have con-
structed its railway, with the cars running thereon, from the
city of Wabasha, through the town of West Albany, to the
south line of section 34, in that town, and that the relator,
in consideration of such issue of bonds, would construct its
railway, and have the cars running thereon, by May 1, 1878,
from the city of Wabasha to the south line of section 34, in
the town of West Albany, and that, on delivery to it of the
bonds, it would deliver to the respondent, at its election, an
equal amount of its stock, at par. On receiving the proposi-
tion, the town clerk duly filed, endorsed and recorded it.

On March 16, 1878, the relator caused notice to be given,
by posting, etc., that after March 21, 1878, a petition to the
board of supervisors of respondent, asking it to agree to the
proposition, would be presented to the resident tax-payers of
the town, for their signatures, to which would be appended a
substantial copy of such proposition. On May 13, 1878, the
relator delivered to the respondent's town-clerk a substantial

·copy of the proposition, with the petition thereto appended, asking the board of supervisors to agree to the proposition, which petition bore the signatures of a majority of the resident tax-payers of the town, as shown by the last assessment-roll, such signatures being verified, etc.

It is further stated that the amount of bonds desired, together with the other indebtedness of the town, would not ·exceed 10 per cent. of its valuation, etc.

The relator began and prosecuted the construction of its railway, from the city of Wabasha, and expended large sums of money and incurred large liabilities in such construction, and on May 1, 1878, had completed it to the point named in its proposition, and had in all respects fully complied with the terms of such proposition. On May 17, 1878, the relator notified the proper authorities of respondent that it had so completed its railway to such point, and had complied with its proposition, and demanded the bonds to the amount of $5,000, at the same time tendering certificates of its stock to the same amount. The respondent's authorities refused to issue the bonds.

On the return-day named in the writ, the respondent moved that the writ be quashed.

*R. B. Galusha* and *Young & Newel,* for relator, argued among other things, that while, as a condition of receiving aid from the respondent, the relator was bound to complete its railway to the point named in its proposition by May 1, 1878, and had done so, yet that the aid which it asked and to which it was entitled under the agreement which became perfected on May 13, 1878, in accordance with the statute cited in the opinion, was not merely aid in the construction of that piece of road alone, but aid for its entire enterprise—for the whole line of railway it was authorized to construct, and which had not been completed on May 13, 1878, so that the agreement arrived at and perfected on that day was not open · to the objection that it was an agreement to issue bonds in aid of a railway already constructed.

*Gould & Snow,* for respondent.

BERRY, J.—Laws 1877, *c.* 106, (Gen. St. 1878, *c.* 34, §§ 92–105,) entitled "An act to authorize municipal corporations to aid in the construction of railroads," authorizes (in section 1) any town in this state "*to aid in the construction* of any railroad in this state to be constructed by any railroad company for public use, by authority of any law of this state, in the manner" prescribed in subsequent portions of the chapter. Section 2 provides that "the aid to be contributed to *the construction* of any such railroad," by any town, shall be by its bonds, to be issued to or for the use of such company. Section 3 adds that no such bonds shall be issued until a mutual agreement in relation thereto shall have been arrived at, in one of two modes thereafter specified. Section 4 provides that whenever any such railroad company "shall desire aid *in the construction* of its railroad," from any town, it shall make and deliver to the town clerk a definite proposition in writing which "shall contain a statement of the amount of bonds desired  *  *  *  and  *  *  a statement specifying when said bonds are to be delivered, with reference to the time of the entire or partial construction of said railroad," and "the clerk with whom any such proposition shall be filed shall immediately endorse thereon the date of its receipt by him, and transcribe the same into the record book of the town." Section 7 provides that one mode of arriving at the mutual agreement required shall be as follows: 1st: That the railroad company, within three months after the filing of any such proposition, as aforesaid, shall give notice that, after a day named, a petition to certain authorities of the town, asking them to agree to such proposition, will be presented to the resident tax-payers of the town for their signatures, and such petition shall be appended to a substantial copy of such proposition. "2d: If, within four months after the filing of such proposition with any such  *  *  *  town clerk,  *  *  the said railroad company shall deliver to such clerk a substantial copy or copies of such proposition so filed, with such

petition to the proper authorities of such   *   *   town   *   *
asking such authorities to agree to such proposition appended
thereto, bearing the signatures of a majority of the persons
residing in such   *   *   town   *   *   who were assessed for
taxes upon real or personal estate in such   *   *   town,   *
*   as shown by the last assessment-roll of the district of
which aid is desired, which signatures shall be verified by the
affidavit of some person witnessing such signatures, then such
mutual agreement for the issue of bonds by such municipality,
and of stock by such railroad company, shall be deemed and
considered to have been arrived at and perfected; and there-
upon such bonds shall be issued and delivered, in conformity
with the true intent and meaning of such proposition, and
with the provisions of this act." Section 6 declares that "no
bonds shall be delivered to the company, under such proposi-
tion, until the road, branch or extension thereof, for the con-
struction of which the aid has been granted, shall have been
completed, ready for the passage of the cars continuously,
from one terminus through to the district granting the aid, or
to the nearest point in its line to such district, or from such
terminus to such point as the company in its proposition shall
have proposed to construct said road, where the line of the
road shall not lie through the district."

From this abstract, we think the following propositions are
clearly deducible:

*First.* The statute authorizes a town to aid the construction
of roads. It does not authorize aid to roads already con-
structed. The idea of the law-maker unquestionably was to
authorize aid to be given to roads which were believed to
require aid, in order to secure their construction, and not to
roads which had been constructed without such aid.

*Second.* The aid is to be rendered by the making of a
mutual agreement between the town and the railroad com-
pany, by which the town is legally bound to issue its bonds
to or for the use of the company, upon performance by the

latter of its part of the agreement, and by the issue of bonds accordingly.

*Third.* Until the mutual agreement is "arrived at and perfected," as provided in section 7, no legal liability or obligation whatever is imposed upon or incurred by the town in the premises. In other words, unless an agreement is "arrived at and perfected," as there provided, all steps which may have been taken with the intent of arriving at and perfecting one, or looking in that direction, are absolute nullities.

As a consequence of these propositions, it follows that to be of any effect to bind a town, the agreement to issue bonds must be "arrived at and perfected," before the construction of the road or piece of road, the construction of which the agreement is designed to aid.

This is decisive of this case. The writ shows that the proposition of the relator, the Minnesota Midland Railway Company, to the respondent, contained a statement specifying that the bonds asked for should be issued and delivered to the company when it should have constructed its railroad, with the cars running thereon, from the city of Wabasha, through the town of West Albany, to the south line of section 34 in said town of West Albany, and that the company would, in consideration of the issue and delivery of said bonds, construct its railway, and have the cars running thereon, to said line, by the first day of May, 1878. The writ further shows that the relator had, on May 1, 1878, constructed, completed and equipped its road, in full compliance with the statement contained in its said proposition.

The writ further shows that on May 13, 1878, the relator delivered to the town clerk of the town of Highland, (the respondent,) a substantial copy of the proposition theretofore filed with him, with the petition thereto appended, asking the respondent's board of supervisors to agree to said proposition, which petition bore the signatures of a majority of the resident tax-payers, etc. It appears, then, from the writ, that the relator asked a certain amount of bonds from

the respondent, and, in consideration of their issue, proposed to build and equip a certain length of road. This, so far as the matter of road construction is concerned, is the extent of the proposition. The aid which was asked, and which the relator would have received, and would have been entitled to receive, if the agreement had been seasonably "arrived at and perfected," would have been aid for the construction of the length of road thus proposed to be constructed, and not aid for the construction of any other part of the road which the relator was authorized to construct. Now it appears from the writ that the length of road thus proposed to be constructed and equipped, was completely constructed and equipped, on May 1, 1878, as provided in the relator's proposition, but that the filing, with the town-clerk, of the petition and other papers, was not made until May 13, 1878, so that no agreement had been arrived at or perfected before that date. At that date, the length of road, aid in the construction of which was asked, had already been constructed, and, therefore, as we have before seen, it was not a road or piece of road to aid the construction of which the town was authorized by the statute to issue, or to agree to issue, its bonds. The authority of a town to issue bonds in aid of the construction of a railroad, being wholly derived from statute, can only be exercised in the cases and in the manner which the statute permits and provides. Upon the facts stated in the writ, it therefore follows that the respondent has made no legal agreement to issue its bonds to the relator, and the motion to quash the writ is accordingly granted.*

*A motion to quash a similar writ issued on the relation of the same railway company to the town of West Albany was argued and submitted with the foregoing case, with the same result.

R. B. *Galusha* and *Young & Newel*, for relator.

H. D. *Stocker* and W. J. *Hahn*, for respondent.