---

MARSHAL and others *v.* THE TOWN OF ELGIN.

SAME *v.* THE TOWN OF PLAINVIEW.

*(Circuit Court, D. Minnesota.* September, 1881.)

1. MUNICIPAL BONDS — RECITALS — CONSTITUTIONAL LAW — GENERAL LAWS OF MINNESOTA, 1877, *c.* 106—LIS PENDENS—NOTICE.

In an action to recover the amount of coupons attached to bonds, issued under the provisions of chapter 106, General Laws of Minnesota, 1877, owned by the plaintiffs, and also to recover the amount of coupons taken from bonds sold by them to other parties, *held,* that the recitals in the bonds are conclusive evidence, in favor of a purchaser without other information, that the conditions precedent prescribed in the law had been complied with. *Held, also,* that as the law under which the bonds were issued had been recognized as valid at the time of the purchase, by the highest state court, no subsequent decision could affect their validity in the hands of these purchasers. *Held, also,* that the rule affecting every one with notice of pending suits is inapplicable where negotiable securities constitute the subject-matter.

These actions are brought to recover the amount of coupons which were attached to bonds issued by the towns of Elgin and Plainview, in this district, the plaintiffs being owners of the bonds and coupons, and also to recover the amount of coupons owned by them taken from bonds held by other parties, to whom the plaintiffs had sold them. The bonds and coupons were issued to the Plainview Railroad Company by the town of Plainview, March 16, 1879, and by the town of Elgin about January 1, 1879, under chapter 106, General Laws of Minnesota, 1877, and were purchased by the plaintiffs July 9, 1879, for value, and without notice of any of the matters relied on as defences, except such as appear on their face.

Section 3 of the act referred to provides that no bonds shall be issued until a mutual agreement in relation to the construction of a railroad shall have been arrived at.

Section 4 enacts that a railroad company desiring aid in the construction of its road shall make a proposition in writing which shall contain a statement of the amount of the bonds of the town desired, and when they are to be delivered, which shall be filed with the auditor or clerk.

Section 7 declares that one mode of arriving at the mutual agreement required shall be:

"*First.* That within three months after filing a proposition the railroad company shall cause notice to be given that after a day named a petition to the proper authorities, asking them to agree to such proposition, will be presented to the resident tax-payers, and to the petition shall be appended a copy of the proposition. *Second.* If, within four months after the filing of such proposition with such clerk, * * * the railroad company shall deliver to such clerk a substantial copy, or copies, of such proposition so filed, with such petition, to the proper authorities of such town, asking such authorities to agree to such proposition appended thereto, bearing the signatures of a majority of the persons residing in such * * * town, * * * who were assessed for taxes upon real or personal estate in such * * * town, * * * as shown by the last assessment roll of the district of which aid is desired, which signatures shall be verified by the affidavit of some person witnessing such signatures, then such mutual agreement, for the issue of bonds by such municipality, and of the stock of such railroad company, shall be deemed and considered to have been arrived at and perfected, and thereupon such bonds shall be issued and delivered, in conformity with the true intent and meaning of such proposition, and with the provisions of this act."

Each bond contains the following recital:

"This bond is issued in pursuance of a mutual agreement between said town and said railroad company, which agreement was made in accordance with the laws of the state of Minnesota, and through and by a proposition made by said railroad company, and duly accepted by said town, upon petition

therefor signed by a majority of the resident tax-payers of said town, said agreement having been fully performed by the said railroad company on its part.

"This bond is issued in pursuance of the authority given for that purpose by the laws of the state of Minnesota, and in compliance with a resolution of the board of supervisors of said town."

In the case of the town of Plainview, at or about the time the railroad company had complied on its part with the mutual agreement, one George Harrington, a tax-payer of that town, brought an action, in the district court of the state, against the town officers and the Plainview Railroad Company to restrain the town officers from executing and delivering the bonds as stipulated, for the alleged reason that the act under which they were issued, (section 7, *c.* 106, Laws of Minnesota for 1877,) which provides for arriving at a mutual agreement between the railroad company and the town by proposition and petition of a majority of the resident tax-payers, was unconstitutional and void. A temporary injunction was issued to restrain the execution and delivery of the bonds. The cause was tried January 27, 1879, upon stipulated facts, and among other things it was admitted at the trial—

"That, relying on and induced and influenced by the proceedings set out, and particularly by the resolution of the board of supervisors, the Plainview Railroad Company constructed and had, before the commencement of that action, its line of road constructed, and has had the same graded and the ties and iron laid thereon, with the cars running thereon from a point of junction with the Winona & St. Peter Railroad, in the county of Olmsted, east of the west line of Eyota, in said county, to a point within the corporate limits of the village of Plainview, as the same existed December 31, 1877, and had, in all respects, complied with the terms and conditions specified in the proposition by it to be performed."

The district court held the act valid, and found for the defendants. A motion for a new trial, made by the plaintiff, was denied March 11, 1879, and he appealed from such denial to the supreme court of Minnesota on the next day. Three days afterwards judgment was entered by the district court dissolving the injunction and dismissing the action, and on the next day the town issued the bonds in question. On the sixth of October, 1880, the supreme court of Minnesota, having heard the appeal, decided that the act under which the bonds were issued (chapter 106, § 7, Laws 1877,) was unconstitutional and void.

*S. U. Pinney* and *Thos. Wilson,* for plaintiffs.

*Gordon E. Cole* and *Robt. Taylor,* for defendants.

v.8,no.11—50

NELSON, D. J.   These cases are tried together without a jury.   The only matters relied on in defence are:

*First.* That the provisions of chapter 106, Gen. Laws Minnesota 1877, and particularly of section 7, under which the bonds and coupons issued, were unconstitutional and void.

*Second.* That the decision of the supreme court of Minnesota in the case of *Harrington* v. *The Plainview Railroad Co.* is conclusive and binding in respect to the first point upon the federal courts, as an exposition and construction of the constitution of the state of Minnesota.

The view taken by the court will render it necessary to consider only the second defence urged.   The following propositions must control the decision:

*First.* The recitals in the bonds are conclusive evidence in favor of the plaintiffs, who purchased without other information than that which appears upon their face, that all the conditions precedent prescribed in the law had been complied with.

*Second.* If the law under which the bonds issued had been sustained and recognized as valid by the highest court of the state at the time, no subsequent act of the judiciary can impair their validity in the hands of the plaintiffs.

The bonds on their face refer to the law under which power to issue them was given by the legislature, and the coupons, though detached, are described with sufficient certainty in the complaint, and the evidence is plain that they belonged to the bonds issued.   If the bonds are valid obligations, the coupons are identified and follow the bonds, so that, if the second proposition can be applied, the plaintiffs are entitled to recover.

In *State ex rel.* v. *Town of Highland,* 25 Minn. 355, a case arose under the act of 1877, and section 7 was before the supreme court of the state.   Proceedings for a *mandamus* to compel the town of Highland to comply with the mutual agreement entered into as prescribed by this section were instituted, and, on motion to quash the alternative writ which had issued, the respondent's counsel presented and urged, in a written brief, among other things the following, as appears by the records on file, but not given in the report of the case, viz.:

"*Fourth.* Because the act of 1877, *c.* 106, in so far as it attempts to empower a majority of the tax-payers of a town, by means of a petition, to enter into and bind the town by agreement, is unconstitutional and void."

The court, in its decision, after citing the principal provisions of the act, say:

"We think the following propositions clearly deducible: *First.* The statute authorizes a town to aid the construction of railroads.   It does not authorize aid to roads already constructed.   The idea of the law-maker unquestionably was to authorize aid to be given to roads which were believed to require aid

to secure their construction, and not to roads which had been constructed without such aid. *Second.* The aid is to be rendered by the making of a mutual agreement between the town and the railroad company, by which the town is legally bound to issue its bonds to or for the use of the company, upon performance by the latter of its part of the agreement, and by the issue of bonds accordingly. *Third.* Until the mutual agreement is arrived at and perfected, as provided in section 7, no legal liability or obligation whatever is imposed upon or incurred by the town in the premises. In other words, unless an agreement is arrived at and perfected, as there provided, all steps which may have been taken with the intent of arriving at and perfecting one, or looking in that direction, are absolute nullities."

Here was a recognition, in my opinion, of the validity of this law, and a full and comprehensive construction of the section. It is true the court did not consider the constitutional question, but the decision did not express a doubt, and at least favored its validity. This decision was rendered January 10, 1879, and at that time the bonds, with the coupons in suit of the town of Elgin, had been issued and were in the market as commercial securities. The Plainview Railroad Company had also entered into an agreement with the town of Plainview, and by the construction of its road was entitled to receive town bonds, when a suit was commenced in the district court of the state, by a tax-payer and citizen of the town, entitled *Harrington* v. *Town of Plainview et al.*, to enjoin and restrain their issue, and a preliminary injunction issued. This suit was subsequently tried, and the action was dismissed by the court and the injunction dissolved, and the town issued its bonds. An appeal to the supreme court of the state was taken by Harrington, and among other things it was argued on the hearing that section 7 of the act was unconstitutional, and it was so declared by the court. It is insisted that this decision of the highest court of the state is binding and the defendants entitled to judgment. Such is not my opinion. The federal courts, it is true, generally follow the adjudications of the highest courts of the state in the construction of its statutes, but exceptions are recognized, and these cases fall within the rule laid down in *The City* v. *Lamson*, 9 Wall. 477, which is, briefly, where a decision of the highest judicial tribunal at the time the bonds issued favors the validity of the law under which they issued, a subsequent decision impairing their validity will not be followed to the prejudice of *bona fide* holders.

To the same effect is *Douglass* v. *Pike Co.* 101 U. S. 687:

"We have no hesitation in saying that the rights of the parties are to be determined according to the law as it was judicially construed to be when the bonds in question were put on the market as commercial paper." See collated authorities in Dillon on Municipal Corporations.

The question, as stated by the court in that case, is not so much whether the last decision was right as whether it should be followed.

These bonds having been purchased by the plaintiffs before the decision in the *Harrington Case,* and no previous expression by the court other than that contained in *State* v. *Town of Highland,* are "clean obligations to pay" not affected by the last decision.

It is urged that the bonds are invalid in the plaintiffs' hands by the fact that they were purchased during the pendency of the suit in which the law was held to be unconstitutional. The answer to this proposition is that the plaintiffs were not parties to, and had no knowledge of, that suit; and the rule that all persons are bound to take notice of a pending suit does not apply to negotiable securities. 97 U. S. 96.

The plaintiffs are entitled to judgment in each case, and it is so ordered.

McCRARY, C. J. I concur in the conclusions reached in the foregoing opinion, as well as in the reasons by which they are supported.